UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE NEGRON,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROL MICI et al.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 22-cv-12030-DJC<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                    **January 25, 2024**

## I.     Introduction

Plaintiff Jose Negron ("Negron"), an inmate at MCI-Norfolk, brings this lawsuit against Defendants Carol Mici, Commissioner of the Department of Correction ("Mici"), Nelson Alves, Superintendent of MCI-Norfolk ("Alves"), and Jodi Hockert-Lotz, former Deputy Superintendent of Reentry at MCI-Norfolk ("Hockert-Lotz").  D. 1.  Negron moved for injunctive relief to order Defendants to provide medically assisted treatment ("MAT") for his substance use disorder, D. 17, and separately to prohibit Defendants from allegedly interfering with his mailing legal mail and having access to his inmate account.  D. 30.  In response, Defendants oppose both motions, D. 45, 47, and have moved to dismiss Negron's complaint pursuant to Fed. R. Civ. P. 12(b)(6).  D. 46.  Having considered the parties' filings, the Court DENIES Negron's motions for injunctive relief, D. 17, 30 (and his motion for a protective order, D. 31).  Although the time has passed for

1

Negron to file an opposition to the motion to dismiss, D. 46, given his *pro se* status, the Court gives him until February 26, 2024 to file an opposition to same.

## II.     Factual Background

Unless otherwise noted, the following facts are based upon the allegations in Negron's verified complaint, D. 1, and are presumed to be true for the purposes of resolving Defendants' motion to dismiss.[1]

Negron is an inmate, serving a 20-25 year sentence, at MCI-Norfolk where his custody level and placement were "modified" in 2018 "due to safety concern[s]." Id. ¶ 35. He has sued Mici, DOC Commissioner, Alves, the Superintendent of MCI-Norfolk and Lotz, the former deputy there. Id. ¶¶ 35-37. Negron brings this action on behalf of himself and other inmates at the DOC facility alleging that Defendants have denied them access to MAT for their substance abuse disorder. Id. ¶ 1. Negron suffers "from a drug addiction with hard opioids and illicit drugs." D. 18 at 6. He has struggled with this addiction during his incarceration, trying counseling and "cold turkey" detoxication without success. Id. at 14. MAT is the medical standard of care to treat drug addiction and the Food and Drug Administration has approved three medication for this treatment: buprenorphine, methadone and naltrexone. D. 1 ¶ 2, 41, 48-49. The duration and dosing of same is based upon an individual patient's needs and may be "generally lengthy and, in some cases, lifelong." Id. ¶ 2. Numerous correctional facilities have allowed this treatment in their facilities. Id. ¶ 3, 58-61, 77. DOC has implemented MAT at various of its correctional institutions. Id. ¶ 62.

---

[1] As to Negron's motions for injunctive relief, D. 17, 30, the Court is not limited to the allegations in the complaint and has considered the supporting papers filed by Negron in support of his motion including his affidavit, D. 17-1, which largely tracks the allegations in the verified complaint, his affidavit and statement in support of his subsequent motion for injunctive relief, D. 30-1, 30-2, and his other declarations and exhibits including the affidavits he filed at D. 48-1, 48-5, 49-1, 49-3 at 14-21 and 49-8, as well as those affidavits and exhibits filed by Defendants, D. 45-1, 45-2, 47-1, 47-2, 47-3.

The DOC, however, allegedly has not done so in all of its facilities and Negron alleges that inmates at MCI-Norfolk, who have longer sentences, do not have equal access to such treatment. Id. ¶ 5, 62, 81. Specifically, he alleges that given his custody level and place, he has been "excluded . . . from the benefits and equal opportunities alike [sic] other DOC facilities where offenders are enjoying those benefits under MAT treatment." Id. ¶ 5. Further, Negron has received disciplinary reports and punishments for requesting MAT treatment from Defendants. Id. ¶ 6. Further, he also claims that he has been forced to purchase one of the MAT medications, buprenorphine, on the "prison black market" further "jeopardizing the plaintiff['s] rehabilitation, reentry, and recovery." Id. ¶ 6-7; 11, 13, 45 (alleging that a DOC officer was arrested in September 2022 for possessing buprenorphine, which he had been supplying to inmates at MCI-Norfolk). As a result, Negron has been disciplined for having buprenorphine in his system which had not been prescribed, but instead obtained on the prison black market. Id. ¶¶ 14, 89, 91 (explaining discipline was in the form of restitution, loss of prison work and good time credits). After this sequence of events in September 2022, the DOC announced in early October 2022 that inmates at MCI-Norfolk with shorter sentences (less than eighteen months) would receive priority for MAT. Id. ¶ 16. Inmates with life sentences would have to go through "detoxication under MAT" and would have to submit a sick call slip to do so. Id.

On October 25, 2022, Negron alleges that he followed this protocol, submitting a sick call slip requesting this treatment. Id. ¶ 17. The health services personnel at MCI-Norfolk did an intake regarding his request and informed him that the medical department would be contacting him about alternative treatment. Id. ¶ 17. On November 2, 2022, other DOC staff "confront[ed]" him instead about enrolling in the Community Recovery Academy ("CRA") program under the Substance Abuse Program. Id. ¶ 18. Negron declined, explaining that given his withdrawal

3

symptoms from use of buprenorphine, the CRA program would be unsuccessful without adequate medication treatment. Id. ¶ 18. He later informed DOC staff that he would agree to participate in the CRA program when he "receives MAT treatment medication naltrexone." Id. ¶ 19. On November 3, 2022, Negron filed a grievance regarding the denial of MAT, but such request "has fallen upon [deaf] ears." Id. ¶ 20.

Eventually, Negron was seen by DOC mental staff about MAT including naltrexone and was informed that he qualified for this treatment, but all of the buprenorphine would have to be out of system before they could begin since having that and naltrexone in his system could cause an overdose reaction. Id. ¶ 22. Negron asserts that he agreed to this treatment, which he requested, but was not informed that he would be placed in the infirmary at another facility, Souza Baranowski ("SBCC"), for detoxication. Id. ¶ 23-24. Negron requested an informal grievance about this "involuntary" admission, but was advised that he could not do so until after he was released from the infirmary. Id. ¶ 27. While in the infirmary, a doctor did discuss starting MAT with him using "MAT spectrum subonoxe," but Negron was seeking MAT with naltrexone which he did not receive while at SBCC infirmary. Id. ¶ 28-29. Upon being sent back to MCI-Norfolk six days later, Negron filed a medical grievance regarding this course of events. Id. ¶ 33.

Negron asserts an Eighth Amendment claim (Count I), that the denial of MAT constitutes cruel and unusual punishment, Id. ¶ 1, 34, 102-06, and that such denial constitutes discrimination in violation of the Americans with Disabilities Act ("ADA") (Counts II-IV), Id. ¶ 1, 34, 107-25, including that Defendants retaliated against him in violation of the ADA "by sanctioning plaintiff for his disability substance use, without adequate due process and the benefits of services, programs and activities . . . available to other prisoners." Id. ¶ 34. In his complaint, Negron seeks injunctive relief of equal access to "MAT treatment and the medication naltrexone" and

declaratory judgment that the DOC's MAT policies, as applied to Plaintiff violated the Eighth Amendment and the ADA.  Id. ¶ 34; Id. at 36-37.

In his initial motion for injunctive relief, he seeks to compel the DOC to provide MAT and stop the DOC's alleged "practice of compulsory withdrawal," provide him with naltrexone for MAT, and prohibit the DOC from disciplining him for taking any treatment medication, however obtained "during the period of time when the defendants were not providing [him] treatment [or] adequate care under MAT."  D. 17 at 3-4.  In his subsequent motion for injunctive relief, D. 30, Negron seeks injunctive relief to prohibit the DOC from interfering with his ability to send legal mail or his ability to access funds in his prison account.  Id. at 1-3.

### III.     Standard of Review

#### A.     Standard for Obtaining Injunctive Relief

Injunctive relief "is an 'extraordinary and drastic remedy.'"  Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689–90 (2008)).  To obtain such relief, the Court must consider:  (1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities between the parties; and (4) whether granting the injunction is in the public interest.  Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013).  A plaintiff "bears the burden of establishing that these four factors weigh in its favor."  Esso Standard Oil Co. (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) (citation omitted).

### IV.     Procedural History

Negron filed this lawsuit against Defendants on November 28, 2022.  D. 1.  He initially sought a TRO *ex parte*, D. 2, which the Court denied without prejudice, noting that he could file renewed motion that was served on Defendants.  D. 10.  Negron then filed a motion for injunctive

5

relief on March 8, 2023, D. 17. On April 21, 2023, the Court, among other things, allowed Negron's renewed motion to proceed *in forma pauperis* (which had been initially denied, D. 9) and allowed summonses for the Defendants to issue. D. 24. Before Defendants could be served, Negron filed his second motion for injunctive relief on May 18, 2023. D. 30. Defendants were served between June 7, 2023 and June 20, 2023, D. 35-37, and the Court initially gave Defendants until July 19, 2023 to respond to Negron's motions for injunctive relief. D. 40. Defendants moved for an extension of this deadline, D. 43, which the Court has allowed. On August 4, 2023, Defendants filed their oppositions to the motions for injunctive relief, D. 45, 47, and, the same day, also moved to dismiss the complaint. D. 46.

**V.    Discussion**

    **A.    Addressing Negron's Motions for Injunctive Relief**

        *1.    Likelihood of Success on the Merits*

In this case, Negron asserts an Eighth Amendment claim pursuant to 42 U.S.C. § 1983, claiming that Defendants are deliberately indifferent to his medical needs, namely his need for MAT to treat his substance abuse disorder. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' . . . proscribed by the Eighth Amendment," Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal citation omitted). To make out such a claim, a plaintiff must satisfy both an objective and subjective injury. Snell v. Neville, 998 F.3d 474, 494-95 (1st Cir. 2021). First, as to the objective prong, the plaintiff must establish that he had a "'serious medical need[]' for which the defendants provided inadequate care." Id. at 495 (alteration in original) (quoting Estelle, 429 U.S. at 104). "A medical need is sufficiently serious if it 'has been diagnosed by a physician as mandating treatment,' or is 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Sosa v. Mass.

Dep't of Corr., 80 F.4th 15, 27 (1st Cir. 2023) (quoting Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018)).  This inquiry is directed towards "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract."  Abernathy v. Anderson, 984 F.3d 1, 7 (1st Cir. 2020) (citation omitted).  The Eighth Amendment does not require prison administrators to provide "care that is ideal, or of the [plaintiff]'s choosing," but "[r]ather, the Constitution proscribes care that is 'so inadequate as to shock the conscience.'"  Kosilek v. Spencer, 774 F.3d 63, 82–83 (1st Cir. 2014) (internal citations omitted).  Second, the plaintiff must establish that "prison administrators also exhibit[ed] deliberate indifference to the [plaintiff's] need."  Id. at 83.  Deliberate indifference is "more than negligence . . . yet it need not be intentional harm."  Snell, 998 F.3d at 497 (internal citation omitted).  "The defendants must have known of the risk of harm to the plaintiff and disregarded it."  Id. (citation omitted).

As to this objective prong, Defendants do not dispute that substance abuse disorder is a serious medical need and the DOC was on notice of same.  D. 18 at 26-27.  They do, however, dispute that they provided inadequate care to Negron.  As attested in their opposition, D. 47-1 (Aff. of Jeffrey Fisher, DOC Assistant Deputy Commissioner of Clinical Services), the DOC contracts with Spectrum Health Services to provided MAT to DOC inmates.  D. 47 at 6; D. 47-1 at ¶ 5.  Spectrum, the health care provider, makes the clinical decisions about the medical necessity of MAT.  D. 47 at 6-7; D. 47-1 at ¶ 5; D. 47-2.

As to the subjective prong, Defendants dispute that they exhibited deliberate indifference to his medical needs.  Snell, 998 F.3d at 495.  Far from disregarding it, the present record indicates that Negron has been and is receiving MAT at MCI-Norfolk.  D. 47-1 at ¶¶ 7, 10 (attesting as to information received from Spectrum).  As the DOC attests, such "clinically appropriate MAT is

and will continue to be provided to Negron by Spectrum." D. 47-1 at ¶ 11.  Although Negron may not be receiving the form of MAT that he initially had requested, for constitutional analysis, failure to give an inmate the care of his choice does not constitute deliberate indifference where he is receiving adequate care.  See United States v. DeCologero, 821 F.2d 39, 43 (1st Cir. 1987).  There is nothing in the present record that suggests that Negron is not received sufficient care in light of his care (and, as the DOC indicates, his future care) with MAT.  Even as alleged, MAT was made available to him, but he had to detox before it could be administered.  D. 1 ¶ 22.  Negron, as alleged, initially declined MAT (with the use of another drug), because he was seeking MAT with naltrexone.  D. 1 at 36 (seeking preliminary and permanent injunctive relief ordering MA "and medication naltrexone").  That the medical professionals have determined that MAT with other drugs and not the naltrexone that Negron requests is not a sufficient basis to suggest that Negron is reasonably likely to meet the standard for showing deliberate indifference or that compelling the specific form of MAT that he seeks here.

Given this record, this case does not rise to the level of a reasonable likelihood of success on the merits of his Eighth Amendment claim since, even as alleged, he is not being denied access to MAT.  That is, it is unlike Pesce v. Cuppinger, 355 F. Supp. 3d 35, 47-48 (D. Mass. 2018) in which this Court determined that the plaintiff was reasonably likely to succeed on his Eighth Amendment claim.  There, the jail, where plaintiff was about to begin a sentence, refused to continue his previously prescribed MAT and that "course of treatment ignores and contradicts his physician's recommendations" and "contrary to the opinions of health care professionals."  Id. at 48; Smith v. Aroostook Cnty, 922 F.3d 41, 42 (1st Cir. 2019) (affirming allowance of preliminary injunction where plaintiff, soon to be incarcerated, was on prescribed MAT and the jail was not going to make that treatment available).  Based upon the present record, the same is not true here

8

and the only medical professional opinions offered here, those of Spectrum, align with the MAT made available to Negron.

For similar reasons, the Court does not conclude that Negron has a reasonable likelihood of success on his ADA claims. For an ADA discrimination claim, a plaintiff must show: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in, or denied the benefits of some public entity's services, programs or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 283 (1st Cir. 2006) (quoting Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000)) (internal quotation marks omitted); Pesce, 355 F. Supp. 3d at 45. The essence of his claim is that Defendants' failure to provide the reasonable accommodation of MAT with naltrexone amounts ADA discrimination. D. 18 at 37 ¶ 142. It is presently undisputed that Negron that is an individual with a disability, namely substance abuse disorder. D. 47 at 16. Given the present, preliminary record here, however, the Court does not conclude that Negron has shown that he has been excluded from medical services (namely, the provision of MAT), or that any alleged exclusion was because of his disability. In fact, it is reasonable to conclude on the present record that any exclusion was not because of his disability, but of the medical concern that Negron, who had admittedly been taking buprenorphine obtained from the black market, needed to detox from that drug so that he would not experience an overdose reaction if he received MAT with naltrexone. D. 1 ¶ 22; D. 47 at 17. Accordingly, the Court cannot conclude that Negron has a reasonable likelihood of success on this claim.

Reading the complaint in the light most favorable to Negron, it appears that he may also be asserting a retaliation claim under the ADA as well. D. 1 ¶ 34. To the extent that Negron also

asserts a retaliation claim against Defendants under the ADA, he must prove that "(1) he engaged in conduct protected by the ADA, such as complaining about a lack of a reasonable accommodation; (2) the defendants subjected him to some adverse action; and (3) there was a causal connection between the protected conduct and the adverse action." Snell, 998 F.3d at 487 (citing D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012)). If Negron establishes a *prima facie* case, the burden shifts to Defendants "to provide a 'legitimate non-retaliatory explanation for the adverse action.'" Id. (quoting Esposito, 675 F.3d at 42). The burden then shifts back to Negron "to establish sufficient facts such that a reasonable juror could believe the defendants' explanations were pretextual, meaning the defendants were 'motivated by a retaliatory animus.'" Id. (quoting Esposito, 675 F.3d at 42). Even assuming that Negron, who complained about lack of access to MAT with naltrexone, has sufficiently alleged that each of the Defendant took adverse action against him, there has not been a sufficient showing here that there is a causal connection between his complaints and the alleged adverse action (namely, denial of MAT with naltrexone or disciplinary reports for having taken buprenorphine obtained from the prison black market). Any decision taken about the form of MAT was on the basis of medical decisions by Spectrum, and the Defendants, DOC officials, were entitled to rely upon such medical decisions. Snell, 998 F.3d at 500-01; Hayes v. Snyder, 546 F.3d 516, 527 (7th Cir. 2008).

For all these reasons, Negron has not shown a reasonably likelihood of success on his claims, the first, requisite showing for preliminary injunctive relief and the "main bearing wall of this framework," W Holding Co. v. AIG Ins. Co.-Puerto Rico, 748 F.3d 377, 383 (1st Cir. 2014) (internal citation and quotation marks omitted). "[I]f the moving party cannot demonstrate that [he] is likely to succeed in [his] quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002).

10

Accordingly, the measures of preliminary injunctive relief that Negron seeks in terms of compelling not just MAT (which he is receiving), but a certain form of MAT, and prohibiting Defendants from ordering other forms of drug treatments or from disciplining him for use of drugs obtained on the prison black market, D. 17 at 3-4, fail with the lack of a showing of reasonable likelihood of success on his claims asserted in the complaint. This is particularly true as to the relief that he seeks as to his past (and future) discipline by the DOC for obtaining and use of drugs from the prison black market given the necessity of DOC to maintain safety and security within the facility. See Bell v. Wolfish, 441 U.S. 520, 547 (1979). The same is also true with the injunctive relief that Negron seeks in his second motion for injunctive relief, namely prohibiting Defendants from interfering with his ability to send legal mail or his ability to access funds in his prison savings account. D. 30 at 1-3. Negron's complaint, D. 1, does not include a claim regarding same so the reasonable likelihood of success analysis for this relief still turns on the Eighth Amendment and ADA claims that he has asserted in the complaint, which the Court has addressed above. Even if Negron had asserted a First Amendment access to the courts claim, the Court cannot say that the Court has shown a reasonable likelihood of succeeding on such a claim. To state such a claim, a plaint "must allege that the defendant[s] took or [were] responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." Ellis v. Viles, No. 09-40001-PBS, 2010 WL 6465282, at *4 (D. Mass. Aug. 26, 2010) (internal citation and quotation marks omitted). A plaintiff must allege not only that defendant's alleged conduct was "deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." Id. (internal citation and quotation marks omitted). Such is not the case here, even considering Negron's various affidavits, see D. 30-1, 30-2, 49-3 at 14-22, regarding this matter. At base, Negron alleges that the restitution hold on this account (imposed

11

as a result of DOC discipline for his use of buprenorphine that he obtained on the "prison black market"), D. 1 ¶ 14, 89, 91; D. 30 at 1-3, and such unjustified penalty is preventing him from having funds for legal mail postage and that the DOC should declare him indigent as a result. As the Defendants' opposition attests, Negron has sufficient monies in his savings account to remove the hold (and the DOC has previously allowed Negron to make such transfers from his savings account as recently as June 13, 2023, D. 45-2), and, even with the restitution paid, his balances would exceed the maximum allowed to warrant indigency status under their applicable regulations, 103 C.M.R. § 481.05, given the balance in his inmate account at the relevant intervals. D. 45 at 3; D. 45-1 (attesting as to these balances and that Negron is not indigent under § 481.05); D. 45-2 (attaching an inmate transaction report for Negron's account showing a balance exceeding maximum allowed for declaration of indigency). Even assuming that Negron's allegations about access to his monies to accounts are attributable to the Defendants here, as Negron attests, D. 49-3 at 21, significantly, there has been no showing that such conduct resulted in the type of actual injury to Negron that is necessary to state such a claim. For the legal and factual reasons cited here (which includes consideration of the numerous filings that Negron has been able to file in this case since its initiation on November 28, 2022), the Court has found that preliminary injunctive relief is not warranted and it has not yet resolved Defendants' motion to dismiss, D. 46. Accordingly, even if Negron had asserted such a First Amendment claim in his complaint, there has been no showing of a reasonable likelihood of success on that claim.

Although the Court need not reach the other factors, the Court does so briefly, in the interest of completeness.

2.  *Risk of Irreparable Harm*

To obtain injunctive relief, a plaintiff must also show a "significant risk of irreparable harm if the injunction is withheld." EEOC v. Astra USA, 94 F.3d 738, 742 (1st Cir. 1996) (citation omitted). Negron argues that the risk of irreparable harm that he faces is the untenable choice of choosing buprenorphine in the absence of MAT to prevent any harm from withdrawal. D. 18 at 45-46. Given the Defendants' response, including but not limited to the Fisher Affidavit, indicates that Negron has had, and will have, access to MAT, D. 47-1 ¶¶ 10-11, and that the detoxication was required to ensure that he was not at risk of overdose, the Court does not conclude that Negron faces a risk of irreparable harm in the absence of the injunctive relief he seeks. Unlike other cases cited above, see, e.g., Pesce, 355 F. Supp. 3d at 48, where plaintiff would have no access to MAT, the Court does not conclude that Negron is facing the same risk of irreparable harm. Similarly, Negron's claims about the restitution hold on his inmate account and the DOC's alleged failure to declare him indigent, D. 30 at 4-6, do not amount to a risk of irreparable harm. As discussed above, even assuming that either of those alleged actions by the DOC were wrongful, there has been no showing that such actions have resulted in actual injury to Negron in regard to the disposition of otherwise meritorious claims. Also, to the extent that Negron is seeking a "protective order" regarding the identity of other inmates whom he indicates have been assisting him with sending out legal mail, D. 31, there has been no showing that such action is warranted and the Court denies that motion.

3.  *Public Interest*

Injunctive relief is not appropriate unless there is "a fit (or lack of friction) between the injunction and the public interest." Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003) (citation omitted). Here, the Court does not conclude that the issuance of the injunctive

relief sought is in the public interest, particularly where it is, in effect, seeking to overturn the medical judgment of Spectrum medical professionals and the change urged as to the discipline for the acquiring and use of drugs on the prison black market appears to have been necessary to Negron's own health and safety, and the order and general safety of the prison population that the DOC must maintain.  D. 17 at 3-4; D. 48-5 (seeking, in letter to Defendant Alves, to have "[e]very disciplinary report issued" dismissed "and all related material expunge[d]," removal of disciplinary sanctions and MAT "without personnel's interference with treatment medication").

### 4. *Balance of Equities*

"Any potential harm caused to [Negron] by a denial of its motion must be balanced against any reciprocal harm caused to [Defendants] by the imposition of an injunction." TouchPoint Sols., Inc. v. Eastman Kodak Co., 345 F. Supp. 2d 23, 32 (D. Mass. 2004).  As in the discussion of the public interest, the balance of equities do not weigh in favor of Negron, where the only medical opinion referenced in the record is in accordance with the course of treatment, MAT, offered to him, and the allowance of this motion on this record would require the DOC to take actions that are contrary to same and would interfere with the rules and regulations regarding the use of illicit drugs by inmates at MCI-Norfolk.

For all of these reasons, the Court DENIES the injunctive relief sought by Negron, D. 17, 30.

    **B.**    <u>**Addressing Defendants' Motion to Dismiss**</u>

Although the Court concluded that Negron had not shown a reasonable likelihood of success on his claims at this preliminary stage of the proceedings, it does not necessarily follow that he has not plausibly stated claims for violation of the Eighth Amendment and ADA against Defendants. <u>See, e.g.</u>, <u>Lu v. Hulme</u>, No. 12-11117-MLW, 2013 WL 1331028, at *10 (D. Mass. Mar. 30, 2013) (concluding that plaintiff's "allegations, liberally construed, state a plausible claim," but "[t]hey do not, however, establish the required reasonable likelihood of success on the merits"). Negron has not yet responded to Defendants' motion to dismiss, but had moved in D. 50 to, among other things, to extend the time for him to do so. Although Negron has not filed a response yet to that motion, the Court will give him, a *pro se* litigant, further time, specifically until February 26, 2024, to respond to the Defendants' motion to dismiss, D. 46.

**VI.**    **Conclusion**

For the above reasons, the Court DENIES Negron's motions for injunctive relief, D. 17, 30 (and his motion for a protective order, D. 31), and ORDERS that Plaintiff shall file any opposition to Defendants' pending motion to dismiss, D. 46, by February 26, 2024.

    **So Ordered.**

                                                                          <u>/s Denise J. Casper</u>
                                                                          United States District Judge